IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
_____

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                              No. CR 10-116 BDB

HAROLD R. WELLS,

      Defendant.

## MEMORANDUM OPINION
## IN SUPPORT OF
## ORDER DENYING NEW TRIAL

FOLLOWING nine days of evidence, the jury found Defendant, Harold Wells, guilty of carrying and possession of a firearm during a drug trafficking crime; conspiring with John Gray to possess with intent to distribute methamphetamine in an amount greater than 500 grams; conspiracy to steal and seize money from a drug dealer; stealing funds from the United States; and using a telephone to facilitate a conspiracy to distribute drugs. Defendant Wells now moves for a new trial [doc. 252]. This motion lacks merit and will be Denied.

I.    *Prosecutor's Closing Arguments*

Wells' counsel argues the Court should *sua sponte* have given a jury instruction to correct the "misstatement" of the United States during closing that Defendant was involved in an illegal conspiracy. Since no motion for such instruction was made, the

Court will consider this under the plain error standard. *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1094 (10th Cir. 2007). However, the Court finds no error in the prosecutor's description of the conspiracy between J.J. Gray, FBI undercover Agent McDoulett (Joker) and Defendant Wells. This conspiracy involved two criminal conspirators and one federal agent and therefore meets the legal definition of a criminal conspiracy. *United States v. Johnson*, 12 F.3d 1540, 1545 (10th Cir. 1993); *United States v. Medina*, 32 F.3d 40, 43-44 (2d Cir. 1994).

Defendant Wells also challenges the prosecutor's inquiry "who is to 'police the police'" as improper as an "appeal to address social ills." (Def.'s Mot. at 4.) The Court disagrees in the context of closing argument in this case alleging police corruption and it is certainly not a basis for a new trial. *See United States v. Duffaut*, 314 F.3d 203, 211 (5th Cir. 2002). Nor does the Court consider Defendant's general argument "the prosecutor improperly argued facts that were not present in the testimony at final argument," (Def.'t Mot. at 3), as a basis for a new trial. *United States v. Carleo*, 576 F.2d 846, 851(10th Cir. 1978); *United States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004).

II.  *Batson Challenge*

Defense counsel used peremptory strikes to eliminate both African Americans from the voir dire panel. The Government advanced a challenge under equal protection as defense counsel now concedes it is entitled to do. *Georgia v. McCollum*, 505 U.S. 42, 55 (1992). Since all African Americans were excluded by defense counsel, the Court called on them for a race neutral justification for the peremptory strikes on

both African Americans. *Batson v. Kentucky*, 476 U.S. 79, 97 (1986); *United States v. Chalan*, 812 F.2d 1302, 1314 (10th Cir. 1987) (when all members of a racial group are struck by peremptory challenge an inference of racial discrimination arises).

As to Mr. Walker, defense counsel pointed out that his jury questionnaire indicated he would question the innocence of one who did not testify and he felt defense lawyers are overbearing. These were sufficiently race neutral to pass the *Batson* challenge. As to the second Black juror, Betty Lou Parker, defense counsel were obviously caught off guard and fumbled for a credible explanation. Their initial explanation, that she lives on the north side of Tulsa where some of the incidents involved actually occurred, was not credible. *United States v. Bishop*, 959 F.2d 820 (9th Cir. 1992), *overruled other grounds, United States v. Nevils*, 598 F.3d 1158 (9th Cir. 2010) (neighborhood proxy for race). They also said she was a retired teacher.

There are two problems with this basis: (a) defense counsel failed to challenge the two White jurors who were school teachers, which creates a presumption of racial motive, *Snyder v. Louisiana*, 552 U.S. 472, 483 (2008); *Miller-El v. Cockrell*, 537 U.S. 322 (2003); *United States v. Pospisil*, 186 F.3d 1023, 1028 (8th Cir. 1999); and (b) defense counsel failed to establish any basis for his conclusion "we have some problems with teachers as jurors from a criminal defendant's standpoint." Indeed, defense counsel asked no questions of Ms. Parker or any other panel member to see if they shared whatever view was being attributed to school teachers. *Ex parte Branch*, 526 So. 2d 609, 624 (Ala. S. Ct. 1987); *People v. Turner*, 726 P.2d 102, 110 (Cal. 1986).

**Counsel then asked that his colleague, Mr. Lunn, be allowed to "take over." Mr. Lunn then advanced the concept that Ms. Parker was in a group "who went to the Baptist church very often" and these folks are sometimes "somewhat doctrinaire." While the issue of *Batson's* application to religious affiliation is unresolved,[1] the Court need not confront it when it is the third choice by backup counsel. A review of the jury questionnaires also indicates there was not such a small minority who went to evangelical churches frequently.[2] Finally, a third defense counsel, Ms. McMurray, argued "there was an African American teacher that was arrested in north Tulsa by T.P.D. and it made the media." Ms. McMurray, however, acknowledged that there was no record Ms. Parker had any knowledge of the incident so counsel "should have maybe addressed this with her."[3] Explanations that might ordinarily pass muster become suspect following explanations best characterized as "fanciful." *See* 2 CRIM. PRAC. MANUAL 54:26 (2011) and cases cited therein. Based on the totality of the circumstances here, the Court concludes defense counsel had used a peremptory strike on Ms. Parker on an impermissible racial ground.**

---

[1] *See Davis v. Minnesota*, 511 U.S. 1115, 1116 (1994) (dissent from denial of cert.) (Thomas J., Scalia J.); *United States v. Girouard*, 521 F.3d 110, 114-15 (1st Cir. 2008); *United States v. Brown*, 352 F.3d 654, 669 (2d Cir. 2003).

[2] Indeed, of the jurors actually selected, one indicated he attended the Assembly of God often and another said the same of the Life Church.

[3] Striking a juror on attributed racial knowledge is at least highly suspect.

4

## III. *Insufficient Evidence*

The Court here adopts the analysis in its Memorandum Opinion on Defendant's Motion for Acquittal.

## IV. *Suppression of Audio and Video*

The Court disposed of this issue by its memorandum opinion denying Defendants' motions to suppress the audio and video tapes of the motel surveillance [doc. 74]. The Court relies on the authorities and discussion in that memorandum opinion to deny a new trial on this issue. *United States v. Wells*, — F. Supp. 3d — 2011 WL 2259748 (N.D. Okla. 2011).

## V. *Entrapment*

Defendant Wells argues "the court erred when it disallowed the testimony of McDoulett that the FBI agents were worried about entrapment of the defendant." (Def.'s Mot. at 5.) Defendant argues this question "was not for the defense of entrapment but to show the time frame of the activities of July 29, 2009. This is especially critical in light of the defense that the drug sale from one government agent to another government informer had to take place before the defendant was informed and the defendant could not have done anything about the phoney (sic) sale." (Def.'s Mot. at 5.)

Defense counsel could have asked a direct question on who was involved when rather than raising the specter of "entrapment." As I ruled at the time, there was absolutely no need to refer specifically to "entrapment." Interjecting the issue of

5

entrapment when that was not asserted as a defense would have had a high probability of confusing the jury. FED. R. EVID. 403.

Moreover, there was evidence that both Gray and Wells knew that Joker had been selling drugs in the Tulsa area for the two months previous to July 2009, as evidenced by the recorded phone calls in which Wells asked Joker such things as, "How's business?" and, "Even though I'm out of town, I know that you still have business as usual." Further, the jury heard multiple conversations between Wells and Gray in which the two discuss Joker coming to town and the fact that Logsdon is getting methamphetamine from Joker. Clearly introduction of the concept of "entrapment" would have been confusing and been contrary to the "end that truth may be ascertained and proceedings justly determined. FED. R. EVID. 102.

VI. *Quantity of Methanphetamine*

As Wells suggests, this is a sentencing issue and will be addressed at that point of the proceedings.

VII. *Conclusion*

For the reasons stated above, the Defendant Wells' *Motion for New Trial Under Rule 33, F.R.Crim.Pro.* must be Denied.

_____
BRUCE D. BLACK
Chief Judge, District of New Mexico
Sitting by Designation